## BUCKLIN v. BUCKLIN.

September, 1864.

Where the rights of creditors do not interfere, a father may make a voluntary provision for his child ;* and a mortgage to a trustee for this purpose is deemed an executed contract, which is as valid, against his heirs, as a transfer for full pecuniary consideration would be.

Such provision may be made by means of a mortgage, because that is an executed conditional transfer of the real estate mortgaged, a suit for foreclosure not being an action to enforce a contract but an equitable proceeding to cut off the right to redeem.

On the death of a mortgagee holding in trust for a third person, the trust does not *ipso facto* fall on the court of chancery. Such a trust is a trust of personalty, and is not governed by 1 R. S. 730, § 68, which applies only to realty.†

Although where there are successive owners of the cause of action for equitable relief, and the right to prosecute arises in the time of the first, the period of limitation commences at that time, and continues

---

\* Compare Savage v. Murphy, 34 N. Y. 508; Phillips v. Wooster, 36 Id. 412; Case v. Phelps, 39 Id. 164.

† See, also, Bunn v. Vaughan, p. 253 of this vol.

Bucklin *v.* Bucklin.

attached to the demand during the several subsequent changes of both ; and when the statute period is elapsed, the demand is barred, though the last proprietor had recently acquired his right; yet, if the first legal proprietor of the claim is a trustee having no interest, the cause of action (in this case the right to foreclose a mortgage) may be regarded as vesting in the *cestui que trust ;* and if she were then under the disability of infancy, the statute does not begin to run as against her until majority.

Olive E. Bucklin brought this action in the supreme court against William and George R. Bucklin, to foreclose a mortgage made by their ancestor William Bucklin, Sr.

William Bucklin, Sr., and his wife Esther, previous to his executing this mortgage, had separated, and she had filed a bill in chancery for a judicial separation (*a mensa et thoro*) on the ground of his cruel treatment of her. In the bill she prayed that he might be compelled to maintain her, and that the custody of their infant daughter Olive E. might be awarded to her. Upon the bill she obtained an injunction restraining him from molesting the child.

In order to compromise the controversy and stay the prosecution of the suit, the husband, William Bucklin, Sr., agreed to make provision for the support of his wife and the infant, together, and separate from himself, and convey a house and lot to the child within six months.

To effect this settlement the mortgage in suit was executed to Vedder Green (who appeared as the next friend of the wife in her divorce suit), and was expressed to be made to him in trust for the wife and infant daughter.

The mortgage, which was set forth in the complaint, recited the above facts ; and after providing for the said support of the wife and daughter, and the suspension of proceedings in the suit, without modification or discontinuance, the mortgage contained the following language: "Now, for the purpose of securing the performance by the said William, of the aforesaid agreements and covenants on his part to be performed; this indenture witnesseth — that the said William Bucklin, in consideration of the premises, and also on consideration of the sum of one dollar, paid to the said William by the said Vedder Green, the receipt of which sum is

hereby confessed and acknowledged, hath granted, bargained, sold," &c., "and doth grant," &c., to Vedder Green and his heirs and assigns forever, [here was inserted the description of the lands; habendum to him, his heirs and assigns, forever,] "provided, that if the said William Bucklin shall within the period of six months convey to Olive Esther Bucklin real estate of the value of one thousand dollars, to consist of a dwelling," &c., and if he shall permit Esther to occupy the same without molestation, and if he shall pay to Esther Bucklin three hundred dollars annually during their joint lives, and shall permit the said Esther Bucklin to have the custody, management, &c., of said Olive Esther Bucklin, without any interference on his part, [and if he should also perform certain other conditions relating to personal property,] then this indenture shall be void. And it is hereby declared that this mortgage is given to Vedder Green in trust for the benefit of Esther Bucklin and her infant daughter Olive Esther Bucklin. And in case the above conditions on the part of said William, or any of them, shall be broken, and it shall at any time hereafter be necessary to enforce this mortgage, the amount that shall be recovered on said mortgage shall be recovered for the benefit of the said Esther and her infant daughter or the survivor of them.

The complaint then averred that Bucklin, Sr., wholly failed to convey land and dwelling, &c., as he agreed (though payment of the annuity was admitted), and demanded judgment for the foreclosure of the mortgage for the sum of one thousand dollars, the value of the land and dwelling promised to be conveyed, and interest, &c.

When the mortgage was made, in 1836, the child (the present plaintiff) was about three years of age. The trustee, Vedder Green, died in 1841, the husband and wife died in 1843 and 1844. In 1857, the daughter, coming of age, procured an order of court appointing her to enforce the trust and bring an action in her own name.

The defendants were heirs of the mortgagor in possession.

The judge before whom the cause was tried sustained the mortgage; found that the husband and wife never afterward cohabited, though for a short time they resided in the same

house; and he gave judgment for plaintiff with interest from the date of the mortgage.

*The supreme court*, at general term affirmed this judgment, holding that this was an action on a sealed instrument, and, if the cause of action had accrued after the Code of Procedure went into effect, it would have been governed by section 90 of the Code, but that as it had accrued before that time, it was governed by 2 *R. S.* c. 8, tit. 3, art. 1, § 9, which enacts that the time which shall have elapsed between the death of any person, and the granting of letters testamentary or of administration on his estate shall not be deemed any part of the time limited by any law, for the commencement of actions by executors or administrators. That had the trust descended to the personal representatives of the trustee, this cause of action would have been saved from the operation of the statute; and that the *cestui que trust* should not be prejudiced by having the trust fall on the court of chancery, as it did on the death of Green, but that an analogous rule should be applied, and the whole term of twenty-one years allowed in which to bring the action, which would prevent it from being barred.

From that judgment the defendants appealed to this court.

*F. Kernan*, for defendants, appellants;—Insisted that there was no consideration for the agreement and mortgage. *Chitty on Cont.* 51; Pennington *v*. Gittings, 2 *Gill & J.* 208; Duvoll *v*. Wilson, 9 *Barb.* 487; and the only pretense of consideration was the illegal one of a separation of husband and wife. Beach *v*. Beach, 2 *Hill*, 260; Rogers *v*. Rogers, 4 *Paige*, 516; Calkins *v*. Long, 22 *Barb.* 97; Carson *v*. Murray, 3 *Paige*, 483; Mercein *v*. People, 25 *Wend.* 64; 2 *Story Eq.* § 1428. That the agreement was rescinded by subsequent cohabitation of the husband and wife. Shelthar *v*. Gregory, 2 *Wend.* 422; Hindley *v*. Westmeath, 6 *Barn. & C.* 200; Westmeath *v*. Salisbury, 5 *Bligh*, 339. That the action was barred. Belmont *v*. O'Brien, 12 *N. Y.* 394. Interest was not allowable except from demand. The action, if any, should be spec... performance. The trust, if valid, had ceased.

Bucklin v. Bucklin.

*John H. Reynolds,* for plaintiff, respondent;—Beside some authorities above mentioned, cited,—as to validity of agreement and mortgage, Baker *v.* Barney, 8 *Johns.* 78; Jee *v.* Thurlow, 2 *Barn. & C.* 547; Radway *v.* Chambers, 2 *East,* 283; Scholey *v.* Goodman, 1 *Carr. & P.* 36; Baker *v.* Cooper, 7 *Serg. & R.* 500; Nichols *v.* Palmer, 5 *Day,* 47; Page *v.* Trafant, 2 *Mass.* 159; 2 *Kent Com.* 174–9; Fenner *v.* Lewis, 1 *Johns.* 44; Todd *v.* Stokes, 4 *Barr Va.* 252. That only creditors could object. *Bell Law of Prop.* 331; vol. 67, *Law Lib.* p. 336; Fitzer *v.* Fitzer, 2 *Atk.* 571; Gath *v.* Gath, 3 *Bro. Ch.* 617; Ross *v.* Willoughby, 10 *Price,* 2; Clough *v.* Lambert, 10 *Sim.* 174; Frampton *v.* Frampton, 4 *Beav.* 287; Calkins *v.* Long, above. That the trust was valid. Hayes *v.* Berger, *Hoff'm.* 1; Champlin *v.* Champlin, *Id.* 55; Calkins *v.* Long, above; *Will. Eq. Jur.* 423; Jackson *v.* Delaney, 11 *Johns.* 365; 13 *Id.* 537; Neilson *v.* Neilson, 6 *Paige,* 106.

BY THE COURT.—DENIO, Ch. J.—The mortgage, so far as it is now sought to be enforced, was created, among other objects, to secure to the plaintiff, then an infant of tender age, a portion of her father's property, to aid in her maintenance during her infancy, and to furnish her with a small independent estate in real property. The differences which had arisen between her parents presented the occasion for this gift; but its validity did not depend upon the merits of that controversy, nor yet upon the legal effect of the agreement for a separation between her father and mother, nor upon the legality of the provisions made by the former for the latter. The contract, so far as it relates to that provision, has either been performed or it is now incapable of performance. The party entitled to its benefits has been long dead, and it does not appear that she left any representative capable of enforcing any of its stipulations which were not performed at her death. Moreover, this suit was not brought to recover such an interest. But the plaintiff survives, and is entitled to the settlement attempted to be made in her favor, provided it was legally valid when made, and provided her

1. Where have not been lost by lapse of time. there appear not to rights of creditors do not stand in the way, and been any in this case, it is perfectly

lawful for a parent to make such provision out of his estate for a child or children, by present, gift, or by testament, as he may think proper. There are cases in which a voluntary executory gift will not be enforced by the courts; but an executed one is as valid as though based a full pecuniary consideration.

A mortgage is an executed conditional transfer of the real estate mortgaged. In judgment of law, any conveyance which would be sufficient to pass the title to a purchaser conveys it to the mortgagee. The instrument executed by William Bucklin to Vedder Green would be a perfect deed of bargain and sale but for the condition by which it was to become void upon performance of the agreement. It expresses a pecuniary consideration which, though nominal, is as adequate to waive a use as though it were the full value of the land; and though it may not have been paid, the defendant is estopped by his deed from denying its payment. By the Revised Statutes it is denominated a grant; but for all substantial purposes it has the effect of a deed of bargain and sale. 1 *R. S.* 738, 739, §§ 137, 138, 142. At common law, and before the jurisdiction of courts of equity to relieve against forfeitures had been established, this deed would have vested in the trustee an estate in fee simple defeasible only by the performance of the conditions. This is of course a technical view of the nature of the mortgage.

By applying to the transaction the equitable doctrines of the courts of equity, now also recognized to a great extent by the courts of law and by modern statutes, the mortgage is simply a security for the payment of the money it was given to secure, and the mortgagor continues to own the land, while the mortgagee's interest is that of a creditor only.

But the defendants' position is formal also. They insist that courts of equity will not decree the performance of a voluntary executory agreement even where the subject is a portion intended for a child or other relative, and authorities are referred to sustain that position. Duvoll *v.* Wilson, 9 *Barb.* 487, and cases cited; but see Souverbye *v.* Arden, 1 *Johns. Ch.* 240, 266, and cases referred to by Chancellor KENT. If the settlement be an executed one, like a deed or mortgage, the doctrine relied on has no application. The title of the mortgaged premises is

transferred by legal conveyance. The mortgagor retains an equity of redemption, equivalent, for many purposes, to a general ownership of the land, but yet, in point of form, an equity. The mortgagor may, it is true, come into a court of equity to enforce his mortgage, as the mortgagee must in order to redeem. The reason why a mortgagee must resort to equity is not because the mortgage is an executory transaction, and requires the aid of a court of chancery, to compel a specific performance. On non-performance of the conditions the mortgage is forfeited at law, but the equity of redemption remains in the mortgagor or his representatives. No prospective language of the parties which can be written is strong enough to produce the forfeiture of that equity, which can only be extinguished by a decree, or an equivalent proceeding, under a positive statute. This rule is expressed by the phrase " once a mortgage always a mortgage." The mortgagee cannot destroy this equity except by a suit in chancery or a statute foreclosure. Formerly, he could bring ejectment to get possession of the estate, after forfeiture at law, but that is now forbidden by statute. Still, if he can be got into possession without a breach of the peace, his title under the mortgage deed is strong enough in law to enable him to defend an ejectment brought by the mortgagee. Mickles *v.* Dillaye, 17 *N. Y.* 80; Mickles *v.* Townsend, 18 *Id.* 575. The plaintiff brings her suit in equity, not for the purpose of being aided in establishing her mortgage under the notion of remedying a defective conveyance, or obtaining a specific performance, but to foreclose and extinguish the defendants' equity of redemption, which a court of law is not competent to deal with. She does not come to establish a voluntary equitable agreement, but to enforce a legal title under an executed conveyance, and to cut off an equity attached to that legal title and vested in the defendants.

A point is made that the mortgage is invalid because made to Green as a trustee, he confessedly having no beneficial interest, and because the purposes of the trust are not such as are comtemplated by the fifty-fifth section of the chapter of the Revised Statutes relating to uses and trusts. Now, although for the purpose of showing that a mortgage is an executed conveyance, and not a mere executory agreement, I have recurred

to the legal nature of that instrument as a conveyance of the land mortgaged, I am not prepared to concede that it should be regarded as "a disposition of the land by deed" within the meaning of the article of the Revised Statutes respecting uses and trusts. 1 *R. S.* 727. The modern idea of a mortgage is a pledge of the land to secure the payment of money. The statute relates to interests in lands, properly so called, and not to collateral pledges made for the purpose of securing interests in personalty. Debts secured by mortgage are declared to be personal assets and go to the personal representatives. 2 *R. S.* 82, § 6, subd. 8. A trust of personalty is not within the statutes of uses and trusts, and may be created for any purpose not forbidden by law. This mortgage is not, therefore, at all within the influence of the fifty-fifth section, or within the one which abolishes uses and trusts. But if it were otherwise, and if the interest in the land conveyed by a mortgagor to a mortgagee were regarded as within the purview of that section, the only effect in this instance would be to annihilate the title and strike out the name of Green, the trustee, and to invest the beneficiaries with the title nominally conferred upon Green. This effect is produced by section 49 of said article, which declares that if a disposition of land be made to one or more persons to the use of or in trust for another, no estate or interest, legal or equitable, shall vest in the trustee; and section 47, which confers upon the beneficiary in such cases an estate of the same quality as his beneficial interest. Again, a trust may, by section 55, also be created to sell lands for the purpose of satisfying any charge thereon. This does not require a pre-existing charge. One created at the same time and by the same instrument which contains the conveyance would be sufficient to bring the disposition within the terms and spirit of the section, and would embrace the case of a mortgage.

I think, therefore, that the instrument contained a valid mortgage of the land described in it, and that it was an available security for the performance of the contract to purchase and convey lands to the value of one thousand dollars to and for the benefit of the plaintiff.

2. The remaining question is whether the plaintiff's rights have been lost by the failure to prosecute in time. The time

within which William Bucklin was to have made the convey-ance, expired March 22, 1837, and this action was commenced January 13, 1858. The delay was nearly twenty years and ten months. The defendants do not set up that the condition has been specifically performed, or that anything has ever been paid as an equivalent, or as damages for the non-performance. They rely upon the lapse of time, and, in terms, plead the statute of limitations.

The rules respecting the time for commencing actions, as affecting this case, are those prescribed by the Revised Statutes, there being a saving clause in that respect as to cases in which the right of action had accrued, in section 73 of the Code.· The form in which the defendant is to avail himself of this defense, that the action was not commenced in time, is pre-scribed by the Code, which declares that the objection that the action was not commenced within the time limited can only be taken by answer. § 74. This rule of pleading applies to the former law of limitations as well as to that established by the new system. But I think the answer is sufficient, though in a very general form.

The Revised Statutes provide that, after the expiration of twenty years from the time a right of action shall accrue upon any sealed instrument for the payment of money, such right shall be presumed to be extinguished by payment. 2 *R. S.* 301, § 48. The case is not within this provision, because the mortgage is not an instrument for the payment of money but for the conveyance of land. Moreover, that provision relates to actions at law, and the Revised Statutes have furnished distinct and different limitations for such actions, and for suits in equity. 2 *R. S.* pp. 299, 300, 301. There is a separate article devoted to the time of commencing suits in courts of equity. Art. 6. Such remedies were not denominated *actions,* until the Code prescribed a new nomenclature. Section 52, of article 6, contains the limitation applicable to this case. It declares that bills for relief in case of the existence of a trust not cog-nizable by the courts of common law, *and in all other cases not herein provided for,* shall be filed within ten years after the cause thereof shall accrue, and not after. The next following section provides that if the person entitled to file any bill spec-

ified in the preceding sections be, at the time the cause for filing such bill, under any of the disabilities mentioned in the prior articles, the time during which such disability shall continue shall be excluded from the limitation contained in the last section. § 53. The plaintiff, it is contended, first became entitled to commence this suit on the death of Vedder Green, in February, 1841. She was then an infant, and infancy was one of the disabilities referred to. She arrived at the age of twenty-one in 1854, and commenced this suit in 1858, four years afterward. But the cause for relief accrued while Green, in form, held the interest as trustee, and for nearly four years prior to his death, he might have filed a bill for the foreclosure of the mortgage. If, however, we add together these two periods—that during which Green might have sued, to that which elapsed between the plaintiff's majority, and the time of bringing this action, the time will yet fall short of ten years. The plaintiff was not, therefore, barred of her action, unless she is precluded from availing herself of the disability on account of the statute having commenced to run when the mortgage was forfeited, in the time of the trustee. On this point the provision of the statute is, "that no person shall avail himself of any disability enumerated in this title, unless *such* disability existed at the time his right of action or of entry accrued. 2 *R. S.* 300, § 41. The right of action accrued to *her* while she was under disability. But this is not precisely what is intended. If there are successive owners of the cause of action, or of equitable relief, and the right to prosecute arises in the time of the first, the period of limitation commences at that time, and continues attached to the demand during the several subsequent changes of both; and when the statute period has elapsed, the demand is barred, though the last proprietor had recently acquired his right. The statute refers to the time when the right to enforce the particular claim of relief accrued to the person who then possessed that right; otherwise the demand could be kept in force indefinitely by successive devolutions of title. The strict language of the statute would not apply to the plaintiff because she was an infant when the right to prosecute accrued to Green. But her disability at that time is not important, if she had not then the right to prosecute. If the statute com-

menced running against the equitable right to relief at the expiration of six months from the execution of the instrument, the plaintiff's disability, when that right devolved upon her at the death of Green, would not protect her, and the demand would be barred at the expiration of the ten years, which was long before the action, was brought.

The idea that the trust which was vested in Green devolved upon the court of chancery, at his death, by force of the statute (1 *R. S.* 730, § 68), is not well founded. The title of the Revised Statutes in which the section is found, relates exclusively to real estate, as will be seen by its title and the entitling of the respective divisions, and by an examination of its several provisions. This being, as has been shown, a trust of personalty, is not within the purview of these provisions, but depends upon the rules of the common law and the doctrines of courts of equity. No doubt these courts, on the application of parties interested in a trust of personal property, may supply the defect of a trustee. The beneficiary is the party entitled to institute proceedings for that purpose. Hence the plaintiff, on the death of Green, might have applied for the appointment of another trustee, or, having the entire interest in herself, so far as relates to her rights in the mortgage, she might have filed her bill for a foreclosure.

There is another view of this question which I think avoids the bar of the statute. The interest of the trustee was merely nominal. He had not the slightest interest in the agreement, the performance of which was attempted to be secured by it. The plaintiff was the sole beneficiary as respects the land agreed to be conveyed to her, except that her mother, during her life, had a certain interest in her possession, which interest has long been extinguished. Now a court of equity in which alone mortgages can be foreclosed, takes notice of the *cestui que trust* as well as that of the trustee. The plaintiff was perfectly competent, the moment the mortgagor had broken the condition, to commence a suit against him and against Green, the trustee, to enforce the mortgage by procuring a foreclosure of the equity of redemption and the sale of the mortgaged premises. That is precisely the claim which she asserts and seeks to enforce in the present suit. That right accrued to her at the

time of the breach of the mortgage, and she was then under the disability of infancy, which disability continued until about four years before the commencement of this suit. Hence she is within the exception in the statute, and the case is not one of a disability arising after the cause of action had accrued, but of a disability existing at that time, and existing in the person entitled to assert that cause of action. It is not at all like the case of one succeeding to a former proprietor by assignment, descent, devise or bequest. She does not take her interest by any such transfer from the trustee. His title was at all times her title. The cause of action accrued to her at the moment the mortgage became liable to be prosecuted for a breach of the condition.

Hence I think the statute was not a bar and that the supreme court was right and that its judgment ought to be affirmed.

H. R. SELDEN, J., was absent. All the other judges concurred.

Judgment affirmed, with costs.